IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ELISABETH PITTS,

                Plaintiff                              Civil No. 10-785-MO

        v.                                 **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

MOSMAN, J.,

      Plaintiff Elisabeth Pitts ("Pitts") challenges the Commissioner's decision finding her not disabled and denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

      I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

## BACKGROUND

Born in 1970, Ms. Pitts applied for DIB and SSI on December 13, 2005.  AR 122-31.[1]  Ms. Pitts alleges disability due to back pain, fibromyalgia, migraine headaches, anxiety, sinusitis, temporomandibular joint pain ("TMJ"), chronic pain, arthritis, depression, and "massive scar tissue."[2]  AR 142.  Ms. Pitts alleges that this disability began on May 1, 2002 (AR 127), but states that she stopped working on September 15, 2005.  AR 142.

The Commissioner denied Ms. Pitts' applications initially and upon reconsideration.  AR 78-102.  An Administrative Law Judge ("ALJ") held hearings on January 10, 2008 (AR 28-64), and June 18, 2008 (AR 65-77), and subsequently found Ms. Pitts not disabled on August 29, 2008.  AR 17-27.  The Appeals Council accepted additional evidence into the record, but declined review of the matter on May 11, 2010.  AR 1-5.

## THE ALJ's FINDINGS

The ALJ found Ms. Pitts' degenerative disc disease, lumbar spine impairment, fibromyalgia, obesity, post-surgical carpal tunnel syndrome, "narcotic dependence and misuse," affective disorder, and anxiety-related disorder "severe" at step two in the sequential proceedings.  AR 20.  The ALJ found that Ms. Pitt did not meet or equal a listing at step three, and assessed Ms. Pitts' residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten

---

[1]Citations "AR" refer to the indicated pages in the official transcript of the administrative record filed by the Commissioner on November 18, 2010 (Docket # 9).

[2]Ms. Pitts also wrote "Esophagitis Epoconderdylitis," and "Daricell," but the meaning of these terms is unclear.  AR 142.

> pounds. The claimant can stand and/or walk for about six hours in an eight hour workday and sit for about six hours in an eight hour workday. The claimant is limited to occasional stooping. The claimant can frequently balance, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. The claimant is limited to frequent bilateral handling. The claimant can perform simple, repetitive tasks and have occasional contact with the general public.

AR 23. The ALJ found that this RFC allowed Ms. Pitts to perform work in the national economy at step five in the sequential proceedings, and therefore found Ms. Pitts not disabled.

## ANALYSIS

Ms. Pitts asserts that the ALJ improperly evaluated her testimony and that of two lay witnesses, improperly assessed the opinion of examining psychologist Dr. Rawlins, and erroneously found her not disabled at step five in the sequential proceedings.

## I.    Credibility

Ms. Pitts asserts that the ALJ failed to provide sufficient reasons for finding her symptom testimony not entirely credible. Pl.'s Opening Br. 13-15. The ALJ found Ms. Pitts' symptom testimony inconsistent with the medical record and inconsistent regarding her limitations and activities of daily living. AR 23-25.

### A.    Credibility Standards

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007) (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The

PAGE 3 - OPINION AND ORDER

ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc)*).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen*, 80 F.3d at 1284.  The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*  The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2005).

      **B.**      **Analysis**

            **1.**      **Medical Evidence and Credibility**

The ALJ also found Ms. Pitts not credible because the medical record shows prolonged drug-seeking behavior, which "indicates that the claimant may have been exaggerating her condition in order to receive narcotic pain medication."  AR 24.  Here the ALJ discussed reports of Ms. Pitts' sixteen-year history of prescription narcotic addiction, and specifically cited numerous episodes of narcotic drug-seeking behavior.  *Id.*  The ALJ also noted that Ms. Pitts has been discharged from several medical practices for violating narcotic drug contracts, and cited a March 21, 2006, arrest for tampering with a narcotics prescription.  *Id.*

The record supports the ALJ's findings.  The ALJ additionally noted at least nine incidences in the record documenting Ms. Pitts' prescription narcotic dependence and the manipulative behavior

PAGE 4 - OPINION AND ORDER

she engaged in to obtain such drugs.  AR 24 (citing Ex. 2F-3, 6F-3, 8F-8, 8F-5, 20F-17, 26F-7, 27F-4, 20F-15, 29F).

The ALJ's first indicated citation, Ex. 2F-3, shows that on June 6, 2003, treating physician Mark Greenburg, M.D., stated that Ms. Pitts had a "strong element of opioid habituation," and that he had a "long discussion" with her about this.  AR 230.  Dr. Greenburg concluded, "she needs to be weaned off despite her claim of acute pain."  *Id.*  The ALJ's second citation, Ex. 6F-3, points to an October 3, 2003, chart note produced by L. Harris, M.D., describing Ms. Pitts manipulation of a pharmacy's distribution of narcotics prescriptions.  AR 293.  Dr. Harris stated, "This duplication of narcotics is my most serious concern as she mislead me about this and either these prescriptions are being sold or she is seriously endangering her health with overuse of acetaminophen, to say nothing of the concerns of narcotics addiction."  *Id.*

The ALJ's third citation, Ex. 8F/8, points to a November 13, 2003, report by Donald Ross, M.D.,  that Ms. Pitts is "still heavily narcotic dependent."  AR 342.  The ALJ's fourth citation, Ex. 8F/3,  shows Dr. Ross' October 13, 2003, note that he explained to Ms. Pitts that he intended to taper her off narcotics, and that, following this discussion, she immediately asked for Percocet.  AR 345.

The ALJ's fifth citation, Ex. 20F/17, points to a March 22, 2006, mental health treatment diagnostic summary, which concluded that Ms. Pitts' only mental health diagnosis was narcotic addiction.  AR 578.  The indicated citation also discusses Ms. Pitts' March 21, 2006, arrest for altering the date of a narcotics prescription.  *Id.*

The ALJ's sixth citation addressing Ms. Pitts' manipulation of narcotics prescriptions, Ex. 26F/7, points to a November 1, 2006, chart note by treating physician Bill Palm, M.D.  AR 605.  Dr. Palm wrote that Ms. Pitts had a "broken physician-patient bond of trust/drug contact" and explained

PAGE 5 - OPINION AND ORDER

that "I have let the patient know in very clear terms that she will not receive any controlled substance here for any condition at any time in the future." *Id.* Dr. Palm referred Ms. Pitts to a methadone clinic for further treatment. *Id.*

The ALJ's seventh citation, Ex. 27F/4, shows a February 21, 2006, chart note from Edward Helman, M.D., stating that he received a telephone call from another physician, Dr. Purtzer, regarding Ms. Pitts' drug contract. AR 617. Dr. Helman told Ms. Pitts that she should not obtain narcotics from multiple sources, and that he would not refill any additional narcotics prescriptions. AR 617.

The ALJ's eight citation, Ex. 20F/15, refers again to Ms. Pitts' mental health diagnostic summary produced by Kolpia Counseling, which here shows that Ms. Pitts "readily admits she takes more pain medication than prescribed. She does not know how much pain medication she takes in a given day, sometimes a pill every two hours," with no period of abstinence in the preceding four years. AR 576.

Finally, the ALJ cited Ex. 29F, which contains chart notes produced by Allied Health Services of Medford between June 25, 2007 and October 30, 2007. AR 642-49. This exhibit shows that Ms. Pitts contemplated taking amphetamines for weight loss (AR 645), that she agreed to participate in Methadone Anonymous meetings (AR 645), and that she again requested increased pain medications. AR 647. This exhibit also shows that Ms. Pitts was employed by a family cleaning business during this period. AR 648.

These citations support the ALJ's finding that Ms. Pitts' reports to medical providers were not credible. While the ALJ should have discussed these reports in more detail, his conclusion is based upon appropriate citations. The ALJ's finding that Ms. Pitts' engaged in manipulative and

deceptive behavior in reporting her complaints of pain to physicians is based upon substantial evidence of record and is affirmed.

### 2.    Activities of Daily Living

The ALJ noted that Ms. Pitts reported that she could not lift five pounds, could walk only ten feet, could not prepare meals, and was restricted in her activities of daily living. AR 23. The ALJ found this testimony inconsistent with Ms. Pitts' reported ability to drive and leave her house, and concluded that the "objective medical evidence suggests the claimant is able to perform more activities than the claimant alleges." *Id.*

The record shows that Ms. Pitts reported spending most of her days in bed or lying on the couch, and that she completes chores her husband "doesn't have time to do." AR 164. Ms. Pitts stated that she requires help putting socks and shoes on, and requires a monthly reminder to take her vitamin B12 shot. AR 165. She then stated that she sits on the couch and folds laundry, and requires encouragement to use her muscles. AR 166. Ms. Pitts reported that she goes outside daily and shops for her children's necessities by mail. AR 167. Her daily hobbies include reading, watching television, and watching her family, and she also talks on the phone daily. AR 168. Ms. Pitts additionally wrote that she prepares dinner for her family. AR 171. In conclusion, Ms. Pitts wrote that she "can't get around," and that she is limited in lifting, walking, stair climbing, squatting, sitting, bending, kneeling, standing, reaching, talking, hearing, and in her memory, ability to complete tasks, concentrate, understand, and follow directions. AR 169.

The ALJ may cite a claimant's activities of daily living in finding a contradiction between the claimant's reports and an allegation of total disability. *Batson*, 359 F.3d at 1196. Here the ALJ concluded that Ms. Pitts' reported limitations were inconsistent with her own testimony that she

PAGE 7 - OPINION AND ORDER

could drive and leave her house. AR 23. The ALJ found that this inconsistency suggested Ms. Pitts could do more activity than she alleged. AR 23. This court must affirm an ALJ's inferences reasonably drawn. *Batson*, 359 F.3d at 1193. The ALJ's discussion of Ms. Pitts' activities of daily living, in combination with the ALJ's remaining credibility findings, discussed below, should therefore be affirmed.

### C.     Credibility Conclusion

In summary, the ALJ provided sufficient reasons for finding Ms. Pitts' symptom testimony not credible. While the ALJ did not provide a lengthy narrative, his citations and conclusions are supported by citations that establish that his findings are based upon the record. The ALJ's credibility findings are therefore affirmed.

## II.     Medical Source Statements

### A.     Standards: Medical Source Statements

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* But, if two medical source opinions conflict, an ALJ need only give "specific and legitimate reasons" for discrediting one opinion in favor of another. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

///

PAGE 8 - OPINION AND ORDER

### B.    Analysis: Examining Psychologist Dr. Rawlins

Grant Rawlins, Ph.D., examined Ms. Pitts for Disability Determination Services ("DDS") on March 9, 2006. AR 524-30. Dr. Rawlins reviewed chart notes produced by Drs. Sandovol and Konickney in July 2003, July 2004, and September 2004. *Id.* He noted Ms. Pitts' history of prescription narcotic drug-seeking behavior (AR 525), but wrote that, "when I inquired specifically about overuse of prescription medications, as indicated in the medical records, she firmly denied such." AR 527. Dr. Rawlins also stated, "she gave no reason to question her reliability as an informant, and no overt exaggeration or malingering behavior was noted." AR 527.

Dr. Rawlins subsequently conducted a clinical evaluation and interview, diagnosing cyclothymic disorder and panic disorder without agoraphobia. AR 530. He suggested a "moderate to marked" impairment in Ms. Pitts' ability to perform simple and repetitive tasks and accept workplace instruction and criticism. *Id.*

The ALJ noted Dr. Rawlins' opinion, and found it inconsistent with the medical record. AR 25. Dr. Rawlins' evaluation shows that he accepted Ms. Pitts' report that she did not abuse narcotic medications. AR 525. As discussed above, the record is replete with instances of Ms. Pitts' abuse of narcotic medications. Further, no other provider diagnosed cyclothymic disorder. The ALJ was therefore correct in finding Dr. Rawlins' report inconsistent with the medical record.

The ALJ also rejected Dr. Rawlins' opinion because it was based upon Ms. Pitts' own reports, which the ALJ found not credible. *Id.* The ALJ may reject physician opinions predicated upon reporting of a claimant properly found not credible. *Tonapetyan*, 242 F.3d at 1149. Ms. Pitts now suggests, without citation, that Dr. Rawlins "has the professional training and judgment between a patient's chosen presentation and an actual mental illness." Pl.'s Opening Br. 12. This reasoning

PAGE 9 - OPINION AND ORDER

is not based upon the proper legal standards.  The ALJ's conclusions regarding Dr. Rawlins are therefore affirmed.

### III.    Lay Witness Testimony

Ms. Pitts asserts that the ALJ improperly rejected the testimony of her mother, Carol Hansen. Pl.'s Opening Br. 16.  Ms. Pitts also cites the hearing testimony of her husband, Chris Pitts, but does not explain the manner in which the ALJ improperly addressed Mr. Pitts' testimony.  *Id.*

#### A.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition.  *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  However, inconsistency with the medical evidence may constitute a germane reason.  *Lewis*, 236 F.3d at 512.  The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible.  *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

#### B.    Analysis: Lay Witness Testimony

The ALJ discussed testimony submitted by Ms. Hansen and Mr. Pitts.  AR 24.  The ALJ noted the limitations described in their testimony.  Specifically, the ALJ noted Ms. Hansen's statements that she helped Ms. Pitts with household chores and activities, and Mr. Pitts' testimony that Ms. Pitts could no longer participate in outdoor activities due to her alleged impairments.  *Id.* The ALJ concluded, "their reporting is largely based on the claimant's self-report of her symptoms.

It is not consistent with the medical record. Since I have found that the claimant is not credible, their reporting is not probative or persuasive." *Id.*

The record shows that Ms. Hansen reported that Ms. Pitts "doesn't do much," and that Ms. Pitts is unable to work, clean her home, or care for her family. AR 184. Mr. Pitts testified at Ms. Pitts' January 10, 2008, hearing that Ms. Pitts stopped participating in outdoor activities in 2000. AR 59. Mr. Pitts did not describe additional limitations. *Id.*

The ALJ may reject lay testimony predicated upon the reports of a claimant properly found not credible when the lay testimony repeats the limitations expressed in the claimant's testimony. *Valentine*, 574 F.3d at 685. Because the ALJ's finding regarding Ms. Pitts' credibility is based upon the record, and because Ms. Hansen and Mr. Pitts did not express additional or different limitations, the ALJ's findings regarding their testimony is proper. The ALJ's analysis of testimony submitted by Ms. Hansen and Mr. Pitts is therefore affirmed.

## IV.    The ALJ's Step Five Findings

Finally, Ms. Pitts asserts that the ALJ erred in finding her not disabled at step five in the sequential proceedings. Pl.'s Opening Br. 17. Ms. Pitts first asserts that the ALJ's step five findings are inconsistent with the *Dictionary of Occupational Titles* ("*DOT*") and such inconsistency is reversible error. Pl.'s Opening Br. 18. She also asserts that the ALJ's questions to a vocational expert at step five improperly omitted limitations described by Dr. Rawlins and by Ms. Pitts, Ms. Hansen, and Mr. Pitts. *Id.* at 19.

### A.    Standards: Step Five

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.(a)(4)(v). Here the ALJ may

take administrative notice of the occupational data contained in the *DOT*, or draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. §§ 404.1566(d-e); 416.966(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations, *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001), and the ALJ must ask the vocational expert whether her testimony is consistent with the *DOT*. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007). Failure to inquire is harmless if the vocational expert "provided sufficient support for her conclusion so as to justify any potential conflicts," or if no conflict arises. *Id.* at n.19.

The ALJ may rely upon a vocational expert's testimony rather than the *DOT* when the issue is "complex," 20 C.F.R. §§ 404.1566(e), 416.966(e), or when "the record contains persuasive evidence to support the deviation." *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Such evidence includes available job data and a claimant's specific limitations. *Id.* The decision to use a vocational expert is reserved for the Commissioner. 20 C.F.R. §§ 404.1566(e), 416.966(e).

**B.    Analysis**

The ALJ first asked the vocational expert if her testimony was consistent with the *DOT*, and the vocational expert answered affirmatively. Tr. 73. The vocational expert also provided *DOT* identification numbers for each job she cited, indicating further compatibility between her answers and the *DOT*. *Id.* The ALJ therefore met his burden to inquire whether the vocational expert's testimony is consistent with the *DOT* under *Massachi*.

Ms. Pitts' RFC, as formulated by the ALJ, included limitations to "frequent" bilateral handling and "simple tasks." AR 23. The vocational expert testified that a person limited to frequent bilateral handling and "simple repetitive one or two step commands or job duties" could

PAGE 12 - OPINION AND ORDER

perform work as a as table worker, garment sorter, and ticketer.  AR 73.  The VE also noted national

and local job availability data.  *Id.*  The ALJ may rely upon such testimony.  *Johnson*, 60 F.3d at

1435.

### 1.    Vocational Expert Testimony and the *Dictionary of Occupational Titles*

Ms. Pitts first asserts that the vocational expert's testimony is inconsistent with the *DOT*

descriptions.  Pl.'s Opening Br. 18.  She specifically asserts that the jobs indicated by the vocational

expert require "level two" reasoning, and that this is inconsistent with the ALJ's RFC which limited

Ms. Pitts to "simple, repetitive tasks."  *Id.*

The indicated components of the *DOT* are "definitional trailers" accompanying each entry

in the *DOT*; they rely upon a one to six scale corresponding to reasoning levels required for a

particular job.  *DOT* App'x C (4th ed. 1991) (*available at* 1991 WL 688702).  The *DOT* defines

"level two" reasoning as follows: "Apply commonsense understanding to carry out detailed but

uninvolved written or oral *instructions*.  Deal with problems involving a few concrete variables in

or from standardized situations."  *Id.* (emphasis added).  This language addresses "instructions," is

limited to problems involving "few concrete variables," and is thus logically consistent with an

ability to carry out simple "tasks."  *See Abew v. Astrue*, 303 Fed. Appx. 567 (9th Cir. 2008)

(unreported) (finding "simple" tasks consistent with level-two reasoning).[3]  Further, this court has

specifically found that a claimant limited to simple, routine tasks may perform level-two reasoning.

*Koch v. Astrue* (available at 2009 WL 1743680 at *17) (D. Or. June 15, 2009); *see also Tracer v.*

---

[3]Cited in accordance with 9th Cir. R. 36-3, which allows citations to unpublished cases
promulgated after 2007.  9th Cir. R. 36-3.  The Ninth Circuit reached a similar conclusion in
*Temple v. Callahan*, 114 F.3d 1195 (9th Cir. 1997) (unreported), but that case cannot control
under Cir. R. 36-3.

*Astrue*, 2011 WL 2710271 at *17 (D. Or. July 12, 2011). Ms. Pitts' assertion that the vocational expert's testimony impermissibly deviated from the *DOT* regarding level two reasoning therefore fails.

Ms. Pitts also contends that she cannot perform work as a ticketer because the *DOT* states that the position requires "constant" handling. Pl.'s Opening Br. 18. She does not provide a citation for her assertion that the ticketer position requires "constant" handling. *Id.* at 19. The *DOT* clearly states that this position requires "frequent," not "constant," handling. "Ticketer: 652.685-098," *DOT* (*available at* 1991 WL 685765). This argument is misplaced and also fails.

Further, any error pertaining to the handling required by the ticketer position is harmless because the vocational expert also testified that Ms. Pitts could perform work as a table worker and garment sorter, and Ms. Pitts does not assert that these positions are inconsistent with a limitation to "frequent" handling. AR 73.

## 2.    Additional Limitations

Finally, Ms. Pitts asserts that the ALJ's questions to the vocational expert should have included additional limitations assessed by Dr. Rawlins and described in her testimony and that of the lay witnesses. Pl.'s Opening Br. 19. Ms. Pitts does not presently describe such limitations, nor does she explain the manner in which such limitations would support a different step five findings. Because the ALJ properly rejected Dr. Rawlins' opinion, Ms. Pitts' testimony, and the lay witness testimony, this argument is also not sustained.

In summary, the ALJ's step five findings are affirmed.

## <u>CONCLUSION</u>

In conclusion, Ms. Pitts fails to show that the ALJ improperly evaluated her testimony, the

lay witness testimony, and Dr. Rawlins' opinion. She also fails to show that the ALJ made improper

step five findings. The ALJ's decision is based upon the record and the correct legal standards and

is therefore AFFIRMED.

IT IS SO ORDERED.

     Dated this __22nd__ day of August, 2011.

                       /s/ Michael W. Mosman_____
                       Michael W. Mosman
                       United States District Judge

PAGE 15 - OPINION AND ORDER